IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDYWINE COMMUNICATIONS TECHNOLOGIES, LLC,

Plaintiff,

v.

CENTURYTEL BROADBAND SERVICES, LLC, AND QWEST CORPORATION

Defendants.

Civil Action No. 6:12-cv-00286-CEH-DAB

JURY TRIAL DEMANDED

**JOINT STIPULATION REGARDING PATENT ASSERTIONS**

Plaintiff Brandywine Communications Technologies, LLC ("Brandywine") and Defendants CenturyTel Broadband Services, LLC and Qwest Corporation (collectively, "Defendants"), by and through their undersigned counsel, hereby file this stipulation to streamline the disputed issues in this litigation, conserve resources of the parties and the Court, and focus the case on the core disputed issues. The parties therefore stipulate as follows:

1. The parties have agreed that any potential liability of Defendants for the alleged infringement of U.S. Patent Nos. 5,812,537; 5,828,657; 5,206,854; and 5,251,328 (referred to as the '537, '657, '854 and '328 Patents) is reduced by the following representations by Defendants based on Defendants' good faith investigation to date:

i. Defendants' dial-up service is minimal and almost all licensed. Specifically, Legacy Embarq has never offered or sold dial-up Internet service. Legacy

CenturyTel offers and sells dial-up Internet service, and that business line represents the only dial-up Internet service currently offered by Defendants. At no point since at least January 2005 (*i.e.* more than 6 years before the filing of this lawsuit) has Legacy CenturyTel (or any other entity related to Defendants) offered or sold modems to customers. The dial-up call from the customer modem connected to modem banks owned either by Legacy CenturyTel (or its successor business unit) or by third parties. Beginning at least in January 2005, all of the modems in these Legacy CenturyTel (or successor business unit) modem banks were supplied by either Cisco or Alcatel-Lucent, both of which are licensed to the patents on which dial-up Intent service is accused. Prior to November 2008, Legacy Qwest offered and sold dial-up Internet service. At no point since at least January 2005 (*i.e.*, more than 6 years before the filing of this lawsuit) has Legacy Qwest (or any other entity related to Defendants) offered or sold modems to customers. Prior to November 2008, the dial-up call from the customer modem connected to modem banks that were, for the most part, owned by Legacy Qwest (some were owned and operated by third parties). All of the modems in these Legacy Qwest modem banks beginning at least in January 2005 were provided by Cisco or Nortel. As of 09/29/2006, less than 5% were provided by Nortel. Beginning November 2008, Legacy Qwest no longer permitted purchase of dial-up Internet services on any network in which Qwest owned or operated the modem bank into which the customer modem called. From

November 2008 through November 2009, Legacy Qwest continued to provide dial-up services using Qwest's modem banks for customers that existed as of November 2008. During that year, Qwest transitioned from its network to CISP, a third-party network provider that had its own modem banks. In November 2009, Legacy Qwest completely shut down its dial-up network, including the Legacy Qwest modem banks. The 5% of Qwest dial-up customers from 2005-2009 potentially at issue corresponds to no more than approximately 1% of the revenue from the accused ADSL/ADSL2/ADSL2+/VDSL2 services at issue in this litigation.

ii. Defendants' mobile backhaul service is based on fiber to the cell tower (and not copper to the cell tower). Defendants do not offer an end-to-end HDSL product. The only instances of SHDSL being implemented in an end-to-end customer installation correspond to no more than approximately 2% of the subscriber base of the accused ADSL/ADSL2/ADSL2+/VDSL2 services in this litigation.

iii. Defendants' VDSL2 services (the only basis of alleged infringement of the '657 Patent) do not use echo cancellation.

2. In view of these representations by Defendants, and in order to streamline the litigation of the case and provide efficiencies to the parties and the Court, the parties have agreed as follows:

i. Brandywine will withdraw all allegations of infringement of the '657 Patent.

ii. Brandywine's allegations of infringement of the '537, '854 and '328 Patents will be limited to residential DSL (specifically, ADSL and ADSL2/2+ for the '537 and '854 Patents; and ADSL, ADSL2/2+, and VDSL2 , and for the '328 Patent); all other allegations will be deemed withdrawn on the '537, '854 and '328 Patents.

iii. To accommodate any potential remaining exposure from these withdrawals and avoid any detailed calculation of the potential value thereof, the parties stipulate that any damages judgment awarded by the Court based on residential DSL will be increased by 3%. This number is the product of a compromise in order to create efficiencies and conserve resources in the litigation of this case, and is not an admission, waiver or relevant fact for any purpose.

3. With respect to residential DSL, the parties agree that equipment provided to Defendants by the following companies is fully licensed and that there can be no infringement of the '537, '854 '657 and '328 Patents on subscriber loops involving modems supplied by the following companies: Actiontec, Cisco, Motorola, Westell, and Ericsson.

4. Brandywine will consent to Defendants' amending their currently operative pleadings to allege the defense of failure to mark pursuant to 35 U.S.C. § 287(a), and Brandywine reserves all rights to contest that defense on the merits.

5. This stipulation is being entered into solely to streamline the litigation and focus on the most substantial issues in dispute. This agreement and the recitations herein are

without prejudice to either party's positions regarding related facts or products. This stipulation is not admissible before the jury in any trial of this case and cannot be used for any purpose in this litigation other than the enforcement of its express terms.

Respectfully submitted,

*/s/ Tim Devlin*
Christopher T. Hill
Fla. Bar No. 0868371
Steven R. Main
Fla. Bar No. 0144551
**HILL, RUGH, KELLER & MAIN, P.L.**
390 North Orange Avenue, Suite 1610
Orlando, Florida 32801
Telephone: (407) 926-7460
Facsimile: (407) 926-7461
chill@hrkmlaw.com
steve@hrkmlaw.com

*Of Counsel:*

Tim Devlin
(*admitted pro hac vice*)
Brian H. VanderZanden
(*admitted pro hac vice*)
Lei Sun
(*admitted pro hac vice*)
**FARNEY DANIELS PC**
800 S. Austin Ave., Suite 200
Georgetown, Texas 78626
Telephone: (512) 582-2828
Facsimile: (512) 582-2829

*Attorneys for Plaintiff Brandywine Communications Technologies, LLC*

*/s/ Matthew C. Gaudet*
Harvey W. Gurland, Jr., P.A.
Trial Counsel
Fla. Bar No. 284033
Warren D. Zaffuto
Fla. Bar No. 074346
**DUANE MORRIS LLP**
200 South Biscayne Boulevard
Suite 3400
Miami, Florida 33131-2318
Telephone: 305.960.2200
Facsimile: 305.397.1874
HWGurland@duanemorris.com
WDZaffuto@duanemorris.com

*Of Counsel:*

L. Norwood Jameson, Esq.
(*admitted pro hac vice* )
Matthew C. Gaudet, Esq.
(*admitted pro hac vice* )
David C. Dotson, Esq.
(*admitted pro hac vice* )
**DUANE MORRIS LLP**
1075 Peachtree St. NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.420.2623

Joseph A. Powers
(*admitted pro hac vice*)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: 215.979.1000
Facsimile: 215.689.3797

*Attorneys for Defendants CenturyTel Broadband Services, LLC and Qwest Corporation*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 29th day of May, 2013, the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send a notice of electronic filing to all counsel of record.

/s/ *Tim Devlin*
Tim Devlin